# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

---

**Appeal No. 23-6**

---

ANDREW KOSIBA,

*Plaintiff-Appellant,*

v.

CATHOLIC HEALTH SYSTEM OF LONG ISLAND, INC.

*Defendant-Appellee.*

---

On Appeal from the United States District Court

For the Eastern District of New York

Civil Action File: 21-cv-6416

---

APPELLANT'S REPLY BRIEF

---

Andrew Kosiba in *Propria Persona*

33 Neal Path

South Setauket, NY 11720

# PLAINTIFF-APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Andrew Kosiba certifies that the following persons and entities are known to Appellant to have an interest in the outcome of this case or appeal:

1. Roy W. Breitenbach, (Appellee's counsel)
2. Gary R. Brown  (U.S. District Judge)
3. Catholic Health System of Long Island, INC. (Appellee)
4. Andrew Kosiba (*pro se* Appellant)
5. Daniel J. Palermo, (Appellee's counsel)

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellant Andrew Kosiba, hereby certifies that Plaintiff-Appellant has no parent corporation and no publicly held corporation owning 10% or more of its stock.

# STATEMENT REGARDING ORAL ARGUMENT

Appellant Andrew Kosiba, pursuant to Federal Rule of Appellate Procedure 34(a) and the Second Circuit Rule 34 (1)(a), does not request oral argument. The facts and legal arguments are adequately presented in the briefs.

## ARGUMENT AND AUTHORITIES

There was never any *bona fide* "mandate" because not only was the "mandate" negligent, it never created any new legal duty for anyone to comply, nor any new legal authority for anyone, except the Department of Health, to impose any experimental medical treatments on anyone. It was negligent because it was based upon the ludicrous premise that "one person needs to undertake a medical treatment in order to prevent illness in another person". If this were true, then the population of people on Earth and possibly all mammalian life would have become extinct thousands of years ago. If a medical treatment is effective, then one person could take it and be treated or cured. The so-called "mandate" admits on its face, by its very existence, that the medical treatments are not effective in any way whatsoever. Again, the so-called "mandate" created no legal duty or authority and not was legally binding upon anyone.

The foregoing is an uncontested and unopposed fact that completely eviscerates the entire "Covid policy" scheme. Neither the court nor the appellee have any response to it. Why?

Appellee Catholic Health Systems of Long Island, Inc. ("Catholic Systems") cannot simply deny that Appellant, Kosiba, ("Kosiba") was regarded as having a disability as a legal defense that is cognizable under the ADA-AA. It is actually irrelevant whether or not Catholic Systems ever admits to regarding Kosiba as having a disability because he is not required to be regarded as having a disability by a particular individual or group, such as his employer. He simply needs to claim it as his experience and show the adverse actions he endured as a result. In this case, he may be regarded as having a disability by government agencies or even by his friends or members of his family, but the statute has no requirement that he identify, with particularity, who regards him as having a disability. He is only required to identify the adverse actions he received as a result. Kosiba gave notice to Catholic Systems that

- 3 -

he was regarded as having a disability, and asked his employer to respond in a complaint manner to his claim. Catholic Systems's misplaced emphasis on denying Kosiba's that Kosiba is regarded as impaired as long as remains untreated demonstrates, not only its ignorance of the law in general, but its violation of disability law in particular.

Catholic Systems has adopted a policy which demonstrates that Catholic Systems's policy does in fact regard every employee, including Kosiba, as having a disability, which is: being impaired and in need of treatment for "Covid-19", claimed to be a "deadly contagious disease". Catholic Systems stated purpose for implementing the policy is to "prevent the spread of Covid", as if everyone has or might have it.

The announcement of a pandemic, even if there were evidence of one, did not suddenly give Catholic Systems any new legal <u>authority</u> to impose involuntary medical treatments upon any of its employees, including Kosiba. The announcement of a pandemic did not suddenly create any new legal <u>duty</u> for Catholic Systems to involuntarily impose medical treatments, especially experimental ones, upon Kosiba or any of its other employees. Even if Kosiba was ever actually diagnosed with having a deadly contagious disease, this would not constitute a legal defense for Catholic Systems's discrimination and retaliation in violation of the Americans with Disabilities Act as alleged. Claiming there is a pandemic is not a legal defense to ADA violations.,

Catholic Systems's citations of 42 USC §484.70 and 10 N.Y.C.R.R. §2.61 is not a defense to violations of disability law as it does not repeal or amend the Americans with Disabilities Act (ADA), nor is either a cognizable defense under the ADA. That regulation has been stayed and is now under appeal. Judge Neri ruled in *Medical Professionals for Informed Consent v Bassett* that the NYS Department of Health acted outside of its mandate by improperly setting forth 10 NYCRR 2.61. Judge Neri stated

- 4 -

that the "DOH blatantly violated the boundaries of its authority as set forth by the legislature." The Judge also ruled that the mandate is "arbitrary and capricious." The judge stated that "[i]n true Orwellian fashion, the [state] acknowledge[s] then-current COVID-19 shots do not prevent transmission." which contradicted the stated purpose the DOH gave for imposing the treatment as DOH falsely claimed the shots prevented transmission and conferred immunity. The judge further noted that the mandate's definition of "fully vaccinated" as being "determined by the [DOH] in accordance with applicable federal guidelines and recommendations," has no definite meaning and "contains all the hallmarks of absurdity."

Furthermore, even if any provision of the (stayed) 10 N.Y.C.R.R. §2.61 regulation did impose any new legal duty upon Kosiba, or grant any new legal authority or new legal duty upon Catholic Systems, the regulation fails to include provisions requiring any health care worker to waive his medical privacy rights, waive his rights to informed consent or disclose his medical records so that compliance could be confirmed. While 10 N.Y.C.R.R. §2.61(e) purportedly requires a covered entity to disclose documentation, upon request by the Department of Health, this documentation is not required to be disclosed by any _employee_ to an employer, specifically, Kosiba to Catholic Systems. Further, laws do not conflict with each other and the (stayed) 10 N.Y.C.R.R. §2.61 cannot negate Kosiba's medical privacy rights and rights to informed consent, which are squarely rooted in 29 CFR Part 1630.9(d), especially thru his exercise of protected opposition by refusing to participate in Catholic Systems's "Covid policy".

10 N.Y.C.R.R. §2.61 (stayed) does not alleviate Catholic Systems' of its legal duties under long-standing New York public health law, see New York State Public Health Legal Manual, New York State Bar (2011). Only the Department of Health may seek to involuntarily impose medical treatments such as mask-wearing,

- 5 -

experimental vaccines, vaccines, isolation, and quarantine, and it may only do so upon a specific individual or list of specific individuals who present an imminent threat to themselves or others, and only upon evidence, including a *bona fide* medical diagnosis and affidavit provided by a licensed physician, and only upon a hearing in the court. Catholic Systems has never been delegated such authority, nor duty, and such powers cannot be delegated in the first place.

Catholic Systems's citations of 29 CFR Part 1630.15(e) and *Biden v. Missouri* is erroneous because Catholic Systems's policy was not implemented under by any actual law and the Covid treatment policy did not repeal or amend long-standing New York public health policy which requires judicial oversight based upon a physician's affidavit and an evidentiary hearing. New York Public Health Law only permits the Department of Health to conditionally impose medical interventions, not private organizations such as Catholic Systems. There is no such thing as a "vaccine mandate for New York healthcare workers" because first, there are no "vaccines": there are only experimental injections in clinical trial phase under emergency use authorization, which do not confer immunity and do not meet the clinical definition of a vaccine. Additionally, only the Department of Health could possibly obtain the authority to impose such measures, but not upon the entire population at the same time. The DOH may only impose such measures individually and specifically once the individual has been adjudicated by a court of law, based upon *bona fide* medical evidence that he or she was a direct threat to himself or others.

Catholic Systems seeks to impose experimental, life-changing, medical treatments, which have not been approved by the FDA, upon its employees without any diagnosis showing the treatment is even needed. The Covid treatment policy fails to include any provisions for those with disabilities, and fails to explain how any aspect of the policy, is related to any employee's essential job function. Nor does

- 6 -

Catholic Systems give conspicuous notice at any time as to the manner in which its "Covid treatment policy" is related to any single employee's essential job function.

Catholic Systems cites Kosiba's argument, which eloquently establishes that the entire "Covid scheme" is based upon the illogical premise that one person is required to submit to a medical treatment in order to prevent illness in another, Catholic Systems makes no comment or argument against this statement. What is the counter example or counter argument to this statement? Catholic Systems doesn't provide one, instead the appellee simply ignores it. The premise of Catholic Systems's so-called "Covid" policy is implausible and based upon the pure speculation and hypothetical belief that every employee may be infected with a contagious disease, either now, or at some time in the future. Catholic Systems's admitted intent is to "prevent the spread of" a disease, it must therefore seek to discover if any employee has become infected with such a disease. Aside from the treatments described in the policy, the policy fails to include any mechanism by which the results of following the policy can be measured, tested or documented to determine whether or not Catholic Systems's policy would allow it to establish proximate cause for any employee becoming infected, and whether or not Catholic Systems's policy was successful at preventing such a disease. The policy, by its very existence and stated purpose is certainly a disability-related inquiry. This is admitted in the policy itself by its provision to request an employee's waiver of his medical privacy rights and rights to informed consent and submit to a medical examination, then disclose the results to Catholic Systems, who then will impose additional measures upon him (adverse employment actions) based upon which group of employees he would then be classified under, by the provisions of the policy. Furthermore, each and every provision of the policy was clearly intended to treat every employee as if they "had Covid-19", there is no escaping this conclusion.

Catholic Systems' description of the adverse employment actions within its Covid treatment policy does not exclude any of the conduct from being an adverse employment action in violation of the ADA, nor is it a valid legal defense to the ADA violations alleged.

Regarding defendant's "standard of review", Congress stated in 2008 that the main focus of the courts should be whether the employer is satisfying its obligations under the ADA. "...[I]t is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." [1]

This means, for example, examining whether an employer has discriminated against an employee. "[L]ower court cases have too often turned solely on the question of whether the plaintiff is an individual with a disability rather than the merits of discrimination claims, such as whether adverse decisions were impermissibly made by the employer on the basis of disability, reasonable accommodations were denied, or qualification standards were unlawfully discriminatory." [*ibid*]

The plausibility standards in *Bell v. Twombly* and *Ashcroft v. Iqbal* are minimal standards but are currently being manipulated by the Judge into a higher, fictional threshold standard which is being used in place of the actual pleading standard which has been met. The Judge must be ruled by the Congressional intent for the ADA, especially since Congress had to amend the law in 2008 because the courts made decisions which countermanded the original intent of Congress and the law. It appears we are here once again, where the federal court is attempting to create a higher threshold by its use of the legal fiction known as "implausible". The use of this term is

---

[1] 29 CFR Appendix to Part 1630 "Interpretive Guidance on Title I of the Americans With Disabilities Act"

- 8 -

intended to create a higher threshold for those seeking relief and protection under the ADA than was intended by Congress. This is the same despicable conduct demonstrated by the court in *Tennessee v. Lane*, 541 U.S. 509 (2004). Here, the court is not only participating in the same illegal policies as Catholic Systems, it is denying Kosiba access to the court, the law and justice by simply <u>denying</u> that Kosiba has sufficiently alleged acts of discrimination and retaliation.

As with other civil rights laws, individuals seeking protection under these anti-discrimination provisions of the ADA generally must allege and prove that they are members of the "protected class." Under the ADA, this typically means they have to show that they meet the statutory definition of "disability." However, "Congress did not intend for the threshold question of disability to be used as a means of excluding individuals from coverage." Nor is the statutory definition required to also meet the fictional standard of whether the judge wants to believe it, rather it must simply be alleged satisfactorily.

Furthermore, claims of improper disability-related inquiries or medical examinations, improper disclosure of confidential medical information, or retaliation may be brought by any applicant or employee, <u>not just individuals with disabilities.</u> See, e.g., *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 969-70 (8th Cir. 1999); *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999); *Griffin v. Steeltek, Inc.*, 160 F.3d 591, 594 (10th Cir. 1998).

Catholic Systems's citation of 29 CFR Part 1630.15(f) is misplaced, first of all, citing *Sharikov* is not a holding, that case is currently in the appeals process. Secondly, in *Sharikov*, that plaintiff did not allege to "have Covid-19" and the judge misinterpreted his claim by trying to fit it under the "actual' (diagnosed) prong of the ADA. Kosiba is not required to allege having a specific disability when proceeding under the <u>regarded as</u> prong of the ADA, he must allege adverse actions taken based

upon the employer's perception, which, in Kosiba's case, is demonstrated by the policy itself which demands penalties for refusing treatments.

Catholic Systems faults Kosiba for not requesting any ADA accommodations to its policy as set forth under 29 CFR Part 1630.2(o). Kosiba does not require accommodations to a perceived disability, that would be absurd. Kosiba was ready, willing and able to perform his essential job functions and had the ability to do so without the need for any provision of Catholic Systems' "Covid treatment policy". Catholic Systems' so-called medical and religious "exemptions" are not accommodations cognizable under the ADA, because they are not designed to assist an employee perform their job functions.

Catholic Systems attempts to deceptively argue that its "Covid treatment policy" allowed "exemptions" for those with disabilities, while Catholic Systems simply denied and ignored Kosiba's notice that he was regarded as having a disability, and that he was a qualified individual with a disability. Kosiba was not invoking his rights under the ADA for an actual disability, but instead, for being regarded as having a disability (not necessarily by Catholic Systems either), and also for being mis-classified by Catholic Systems as having an impairment that Catholic Systems intended to treat by its "Covid" policy.

Catholic Systems tried to claim Kosiba was a safety hazard but it had no possible way of determining whether or not Kosiba's performance of his essential job function was unsafe as long as he was untreated because it failed to conduct any individualized assessment of Kosiba to determine if he was a direct threat (or even a safety risk) and never based its policy upon any *bona fide* medical diagnosis or health order. Instead, Catholic Systems relied upon fake news and website commentary to arrive at the insane and ridiculous conclusion that Kosiba, and every other employee, needed to be treated for a specific disease. The only safety risk is Catholic Systems'

implementation of experimental medical treatments by laymen without any medical diagnosis or judicial oversight.

Additionally, Catholic Systems states, nonsensically, in its brief that "Policies requiring masking, COVID testing, and disclosure of vaccination status are not disability related inquiries, as defined by the ADA…" yet these treatments, tests and inquiries are solely implemented to "prevent the spread of Covid" which, because the policy intends to treat everyone, shows that Catholic Systems believes everyone needs treatment for this impairment.

Furthermore, Catholic Systems' policy was not "uniformly enforced"; but instead, it was disproportionately applied to the groups of employees who were "treated" for a disability, that Catholic Systems policy refers to as "Covid-19", than to those employees who refused to be treated for such disability. Kosiba is in "untreated" group which received adverse employment actions because of being perceived as "still impaired".

Denying that discrimination took place, or describing the violations with a different set of words is not a legal defense to a complaint for disability discrimination and retaliation..  Claiming that Kosiba refused to participate in defendant's "Covid" policy is not a defense either, especially since no provision of the policy was related in any way to plaintiff's essential job function.  For example, it is not a legal defense when a plaintiff alleges that the policy in question has inherent ADA violations, for Catholic Systems to claim that it fired Kosiba because he refused to comply with the policy.  However, this is the defense that Catholic Systems attempted, and instead of analyzing whether or not the Catholic Systems expressed any cognizable defenses under the ADA, the trial court made false conclusions based upon its own revision of the pleading.

Catholic Systems has failed to express any single defense that is cognizable under the Americans with Disabilities Act, but instead, simply argues that Kosiba did not explain his complaint well enough and then simply denies the allegations in the complaint, none of which constitute any cognizable legal defense for the Catholic Systems's ADA violations.

Instead of making any legitimate or appropriate defense under the ADA, and instead of advising the Catholic Systems of how its policy is illegal, the Catholic Systems' attorneys make a series of ridiculous arguments, none of which constitute a *bona fide* defense for violating the ADA. Not once did the Catholic Systems attempt to cure its policy to bring it into conformity with the law, not once did the Catholic Systems express any defense such as that it had conducted any individualized assessment and determined that Kosiba was a direct threat, nor that it would have or did at any time suffer any undue financial burden for Kosiba's good faith objection and refusal to participate in Catholic Systems's irrational and discriminatory "Covid" policy. Not once did Catholic Systems allege any set of facts that would have established that its Covid treatment policy was implemented in order to fulfill any business necessity, or that plaintiff's refusal to participate would have or did fundamentally alter Catholic Systems's normal operations.

Catholic Systems cannot claim the transitory and minor defense[2] because it failed to conduct any individualized assessment of Kosiba as required by law; and transitory and minor is an evidentiary standard. Catholic Systems refuses to engage with Kosiba's claim which is that he is being perceived as impaired and that perception has been going on as long as the policy remains in place, which is going on three years now. There is nothing transitory about the perceived impairment of being "untreated

---

[2] This ridiculous and unsupported conclusion is made by the court and/or the Catholic Systems simply because commentary appears on the EEOC's website giving employers theoretical advice if an employee claims disability under the "actual" prong, which is not Kosiba's claim and this commentary is disclaimed by the EEOC as unreliable and inaccurate.

for the disease". Instead, the court and Catholic Systems magically make the determination that Catholic Systems is only perceiving Kosiba as having transitory Covid, while ignoring the necessary minor component entirely----which fails because Kosbiba was fired for being untreated, which means his perceived disability is not minor.

Catholic Systems consistently refers to legal citations throughout its brief that are inapplicable to the case at hand because they fall under the actual prong. The citation of the *Cupi* case is not applicable because the case proceeded under the actual disability prong when the plaintiff was sent home for have "symptoms of Covid-19" and the plaintiff was not diagnosed. The citation of *Champion* case is also under the actual disability prong because the plaintiff alleged that her employer fired her because her brother claimed he had Covid and the employer believed Champion infected another employee. She tried to claim disability protection but it was under the actual prong and the court improperly failed to satisfy the "both" criteria for "transitory and minor" regarding the so-called "Covid-19". The citations of *McDonald* and *Thompson* are non-binding, trial court decisions where the plaintiffs appear to have abandoned their cases, and the Judges have mischaracterized the plaintiff's claims as if they were claiming actual disabilities rather than perceived disabilities where the focus needs to shift to the employer's compliance. In both the cases of *Rice v. Guardian*, and *McCone v. Exela*, the plaintiffs were proceeding under the "actual" disability prong because the plaintiffs alleged having a specific disability "Covid-19" and then the court failed to satisfy the "both" criteria for "transitory and minor" regarding the so-called "Covid-19".

Catholic Systems admits many times throughout the record, that the penalties or adverse employment actions imposed upon plaintiff, were causally related to Kosiba's good faith refusal to participate in the policy, a right squarely rooted in 29 CFR Part

1630.9(d). Catholic Systems admits being advised of this provision and admits that it refused to provide Kosiba with informed consent or conduct any individualized assessment to determine if he was a direct threat. Catholic Systems's "Covid" policy itself establishes the timeline and causal relation between the medical treatments sought to be imposed upon Kosiba, and the consequences for refusing to submit to them. There is no other reason Kosiba was punished than because he refused non-job-related and disability-related treatments, tests and inquiries. The punishments included being removed from the work schedule and being denied compensation, which was sufficiently alleged in the amended complaint.

Regarding Catholic Systems's the false conclusion that Kosiba alleged that Catholic Systems "... regarded him as having the disability of a contagious disease", Kosiba has always stated that the employer acted "as if" he were disabled or "as if" he was impaired, or "as if" he needed treatment. He is not claiming an actual disability. He is trying to express his employer's perceptions as demonstrated by the actions it took. Kosiba notified Catholic Systems that he was regarded as having a disability, thereby invoking his rights under the ADA. Catholic Systems merely denied this and ignored Kosiba's notice that he was regarded as having a disability. Kosiba did not allege who regarded him as having a disability and he was not required to identify anyone who regarded him as having a disability. The trial court, in concert with the Catholic Systems, mis-quoted Kosiba and then made its conclusion based upon its own mis-quote and mis-characterization of Kosiba's allegations.

Even if Kosiba did in fact make this allegation, this is not a defense for Catholic Systems and it would have been sufficient to invoke Kosiba's rights under the ADA. Instead, both the Catholic Systems, its attorneys and the court simply claim that Kosiba's notice and his allegations are false, incomprehensible or implausible. This also is not a defense under the ADA nor is it plausible that attorneys lack the ability to

- 14 -

comprehend the complain, even if they have not studied or practiced law under the ADA.

The balance of the responsive brief can be summarized as "you didn't say it the right way, so you don't have access to the law" and this is adequately addressed by Kosiba. Moreover, by the court's own standard, "… heightened risk of future disease is not an impairment…", Catholic Systems cannot impose its policy under the same speculative and hypothetical scenario, specifically, that Kosiba might become a direct threat at some point in the future, while Catholic Systems had no way of making any such determination for certain because it never conducted any individualized assessment. Kosiba's pleading cannot be held to this fabricated legal fiction, anymore than Catholic Systems can falsely claim that his complaint was based upon that criteria, even though it was not. Catholic Systems itself made a record of Kosiba having a disability by mis-classifying him as having an impairment that could only be treated by Catholic Systems's Covid policy.

Regarding Point II, the "Covid" policy instigated the ADA violations and subsequent retaliation alleged in the complaint. Claiming or implying that Kosiba waived his rights to object because he didn't object to the policy before it was implemented is not even an argument, but simply commentary made in bad faith. Quoting another trial court judge is not a legal precedent or holding, and again, not even logical.

And because the "Covid" policy was not imposed or administered by any legal or lawful authority, as already explained here, Catholic Systems was engaged in a myriad of adverse employment actions against Kosiba, the last of which being the termination of his employment. This is all sufficiently alleged in the complaint. It is worth making the point again that Catholic Systems's commentary in Point II further

admits the causal connection between its "Covid" policy as a list of adverse employment actions it took against Kosiba.

Again, Catholic Systems's "Covid" policy was not a lawful condition of employment, and this is abundantly explained here and in the complaint and in appellant's memoranda.

Regarding judicial bias, Kosiba sufficiently alleged that the court itself adopted nearly identical policy as the appellee Catholic Systems. Appellee then ignores this and disingenuously claims that Kosiba alleged no supporting facts. Clearly, Kosiba explained in the complaint that to rule in favor of the plaintiff in this case, would be to rule against the court's own administrative orders and against the appeals court's own administrative orders and against the supreme court's own administrative orders. This is clear and convincing evidence of bias, which certainly has nothing to do with politics or making legal conclusions.

## CONCLUSION

For the reasons herein the judge's decision constitutes an abuse of discretion and is clearly erroneous and should be reversed.

WHEREFORE the appellant requests an order reversing the trial court's decision and remanding it to trial court for further proceedings.

DATED this 2nd day of May, 2023.

Andrew Kosiba, Appellant

- 16 -

## CERTIFICATE OF COMPLIANCE

I, Andrew Kosiba, do certify the following:

1. This document complies with FRAP 32(a)(7)(B) because, excluding parts of the document exempted by FRAP 32(f) this document contains 4,282 words.

2. This document complies with FRAP 32 (a)(5) and (6) because this document has been prepared using Times New Roman font in 14-point.

By: 

## CERTIFICATE OF SERVICE

I, Andrew Kosiba, hereby certify that a true and correct copy of the foregoing was duly served upon the defendant's attorneys Roy W. Breitenbach and Daniel J. Palermo at the address of 333 Earle Ovington Blvd., Suite 901 Uniondale, New York 11553 via first class mail on this 2nd day of May, 2023.

I further certify that four true and correct copies of the foregoing was duly served upon the Second Circuit, Clerk's Office, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007 via first class mail on this 2nd day of May, 2023.

By: 

- 17 -



# PRIORITY
# MAI
# EXPRE

 

RDC 07          10007

U.S. POSTAGE PAID
PME 1-Day
CENTEREACH, NY
11720
MAY 02, 23
AMOUNT
**$29.70**
R2305M148892-05

EXPRESS
QUIRED

## FOR DOMESTIC AND INTERNATIONAL USE

LING
ELOPE
MESTIC AND
ATIONAL USE





# PRIORITY
# MAIL
# EXPRESS®

EI 089 318 251 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( 631 ) 495-9968

Andrew Kosiba
33 Neal Path
South Setauket, NY 11720

**DELIVERY OPTIONS (Customer Use Only)**

☑ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( )

U.S. Court of Appeals Second Circuit
Clerk's Office
Thurgood Marshall Courthouse
40 Foley Square
New York, NY
ZIP + 4® (U.S. ADDRESSES ONLY)

1 0 0 0 7 -



**PAYMENT BY ACCOUNT (if applicable)**

USPS® Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☑ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | | Postage |
| 11720 | 5/3/23 | | $ 29.70 |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 5/2/23 | ☐ 12:00 PM ☑ 3:00 PM | $ | $ |
| Time Accepted  ☐ AM ☑ PM | | Return Receipt Fee | Live Animal Transportation Fee |
| 2:57 | | $ | $ |
| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees | |
| $ | $ | $ 29.70 | |
| Weight  ☐ Flat Rate | Acceptance Employee Initials | | |
| 1 lbs. 20 ozs. | | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
|---|---|---|
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

LABEL 11-B, MAY 2021     PSN 7690-02-000-9996

ule free Package Pickup,
an the QR code.



◁ PEEL FROM THIS CORNER